**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| DEBORAH ANN COLLINS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>NEW ERA LENDING, LLC,<br><br>Defendant. | Case No. 4:26-CV-03829<br><br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Deborah Ann Collins ("Plaintiff"), by her undersigned counsel, for this class

action complaint against New Era Lending, LLC ("Defendant") alleges as follows:

## I.   INTRODUCTION

1.   <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object

to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and

disruption on phone records. Faced with growing public criticism of abusive telephone

marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L.

No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the

law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to

their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between

'[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)."

Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 649 (4th Cir. 2019).

2.   "[T]he law opted for a consumer-driven process that would allow objecting

individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations

was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id*. at 649-50.

3.    Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls, including text messages to numbers on the National Do Not Call Registry, including her own.

4.    Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

## II.    PARTIES

5.    Plaintiff is a natural person who at all relevant times resided in Lake County, Florida.

6.    Defendant is a limited liability company headquartered in Houston, Harris County, Texas.

## III.    JURISDICTION AND VENUE

7.    Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

8.    Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendant resides in this District and a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—were sent from this District.

## IV.    FACTS

9.    Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

10.    Defendant is a mortgage brokerage company that helps consumer with loans and refinancing.

11.    Plaintiff's cellular telephone number is (303) XXX-1717.

12.    This number is a non-commercial telephone number and is not associated with any business.

13.    The number is used for personal residential purposes.

3

14.    Plaintiff's telephone number has been listed on the National Do Not Call Registry since October 31, 2004.

15.    Plaintiff has never been a customer of Defendant's nor asked or inquired to be a customer of the Defendant's.

16.    Plaintiff never consented to receive calls from Defendant.

17.    Plaintiff never did business with Defendant.

18.    Plaintiff received at least fourteen telemarketing text messages promoting mortgage refinancing products and services from Defendant between October 2025 and April 2026.

19.    The messages were sent on or about October 8, 2025; October 22, 2025; October 27, 2025; November 6, 2025; November 19, 2025; December 8, 2025; January 26, 2026; January 27, 2026; February 3, 2026; February 11, 2026; February 20, 2026; February 27, 2026; March 6, 2026; March 12, 2026; March 25, 2026; April 2, 2026; April 8, 2026; April 14, 2026; April 20, 2026; and April 25, 2026. Upon information and belief, each of these messages promoted substantially similar VA mortgage refinancing products and services and was transmitted as part of the same coordinated telemarketing campaign. Each of these messages promoted substantially similar VA mortgage refinancing products and services and was transmitted as part of the same coordinated marketing campaign.

20.    Screenshots of some of the text messages are provided below:

4



21.     The messages were part of a common marketing campaign promoting mortgage refinancing products and services.

22.     The messages repeatedly promoted VA IRRRL and VA Streamline refinancing programs.

23. The messages promoted Defendant's VA mortgage refinance products and encouraged recipients to apply for refinancing through Defendant.

24. The messages advertised substantially similar benefits, including lower mortgage rates, lower monthly payments, skipped mortgage payments, escrow refunds, reduced closing costs, no appraisal requirements, and no income documentation requirements.

25. Plaintiff responded to one of the messages and requested information regarding the advertised refinancing program to investigate who was contacting her illegally.

26. During the communication, the sender requested Plaintiff's email address and represented that application materials and additional information would be sent.

27. Plaintiff then received an email from Ali Habhab at alihabhab@neweralendingllc.com promoting Defendant's VA IRRRL refinancing program.

28. The email advertised the same benefits described in the text messages, including lower rates, lower payments, up to two skipped payments, escrow refunds, no income verification, no hard credit check, and no appraisal requirements.

29. The email identified New Era Lending LLC and contained Defendant's branding and contact information.

30. The email demonstrates that the text messages and email communications were components of the same marketing campaign promoting Defendant's mortgage products.

31. After Plaintiff, through counsel, notified Defendant of Plaintiff's TCPA claims and provided copies of the subject text messages, Defendant's President, Omar Said, responded by email on May 8, 2026.

32. In that email, Omar Said acknowledged that Plaintiff's telephone number had been associated in Defendant's records with a lead identified as "Amina Haywood."

33.    Specifically, Omar Said stated: "We received this phone number linked to a different client named Amina Haywood. The number did not link to Deborah on our end. Something happened with the data and tech so the system did not catch it. We have proof of it."

34.    Defendant's admission confirms that the recurring references to "Amina" contained throughout the subject text messages originated from information maintained within Defendant's own lead management and marketing databases, rather than from Plaintiff.

35.    Defendant further admitted that Plaintiff's telephone number was present in Defendant's systems and that a data or technology error caused Defendant's systems to associate Plaintiff's telephone number with the lead identified as Amina Haywood.

36.    Defendant never denied that the messages originated from Defendant's marketing campaign.

37.    Plaintiff did not give Defendant prior express consent or permission to deliver, or cause to be delivered, advertisement or marketing text messages to telephone number (303) XXX-XXXX.

38.    Plaintiff did not request information or promotional materials from Defendant.

39.    Plaintiff never provided her telephone number to Defendant.

40.    Plaintiff did not sign up for or request text messages from Defendant.

41.    Despite this Plaintiff received at least eight telemarketing text messages from Defendant.

42.    Plaintiff suffered actual harm as a result of the subject text messages in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.

7

43. Upon information and good-faith belief, Defendant knew, or should have known, that telephone number (303) XXX-XXXX was registered with the National Do Not Call Registry on and after October 31, 2004.

## V. CLASS ACTION ALLEGATIONS

44. Class Definition. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Class (the "Class") defined as follows:

> **National Do Not Call Registry Class:** All persons throughout the United States (1) who did not provide their telephone number to Defendant (2) to whom Defendant delivered, or caused to be delivered, more than one voice message or text message within a 12-month period, promoting Defendant's goods or services, (3) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Defendant delivered, or caused to be delivered, at least two of the voice messages or text messages within the 12-month period, (4) within four years preceding the date of this complaint and through the date of class certification.

45. Excluded from the Class are counsel, Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

46. The Class, as defined above, is identifiable through telephone records and telephone number databases.

47. The potential members of the Class likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

48. Individual joinder of these persons is impracticable.

49. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

50.     Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class as he has no interests that conflict with any of the class members.

51.     Plaintiff and all members of the Class have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

52.     This class action complaint seeks injunctive relief and money damages.

53.     There are numerous questions of law and fact common to Plaintiffs and members of the Class. These common questions of law and fact include, but are not limited to, the following:

a.  Defendant's conduct, pattern, and practice as it pertains to delivering, or causing to be delivered, advertisement and telemarketing text messages;

b.  Defendant's practice of delivering, or causing to be delivered, text messages, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

c.  Defendant's violations of the TCPA; and

d.  The availability of statutory penalties.

54.     Plaintiff's claims are typical of the claims of the Class, as they arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

55.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class, she will fairly and adequately protect the interests of the

Class, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

56.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

57.     A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

58.     Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

59.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

60.     In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

61.     A text message is a "call" as defined by the TCPA. *See Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (explaining that a text message is a "call" as defined by the TCPA).

62.     TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

63.     Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

64.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were

promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

65.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to persons such as Plaintiff and the class members who registered their respective cellular or residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

66.     Defendant violated 47 U.S.C. § 227(c)(5) because it delivered to Plaintiff and members of the class, more than one solicitation text message in a 12-month period in violation of 47 C.F.R. § 64.1200.

67.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, Plaintiff, and the members of the class, are entitled to damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a)  Determining that this action is a proper class action;

b)  Designating Plaintiff as a class representative of the class under Federal Rule of Civil Procedure 23;

c)  Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d)  Adjudging and declaring that Defendant violated 47 U.S.C. § 227(c)(5);

12

e) Enjoining Defendant from continuing its violative behavior, including continuing to deliver, or causing to be delivered, solicitation text messages to telephone numbers registered with the DNC Registry for at least thirty days;

f) Awarding Plaintiff and the members of the class damages under 47 U.S.C. § 227(c)(5)(B);

g) Awarding Plaintiff and the members of the class treble damages under 47 U.S.C. § 227(c)(5)(C);

h) Awarding Plaintiff and the class reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i) Awarding Plaintiff and the members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

j) Awarding such other and further relief as the Court may deem just and proper.

## VI.        DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this June 11, 2026.

PLAINTIFF, on behalf of herself
and others similarly situated

By: */s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com