**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| DEBORAH ANN COLLINS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEW ERA LENDING, LLC,<br><br>Defendant. | Case No. 4:26-CV-03829<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT NEW ERA LENDING, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Subject to a ruling on Defendant's Unopposed Motion for Leave (Dkt. 12) to respond to the First Amended Complaint, Defendant New Era Lending, LLC ("New Era" or "Defendant") respectfully moves this Court to dismiss Plaintiff Deborah Ann Collins's ("Plaintiff") First Amended Class Action Complaint ("Amended Complaint" or "FAC") (Dkt. 8) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and in support thereof states as follows:

## I. INTRODUCTION

This case presents a threshold legal question that the Seventh Circuit recently answered in *Steidinger v. Blackstone Med. Services*, 182 F.4th 532 (7th Cir. 2026): *whether 47 U.S.C. § 227(c)(5) creates a private right of action for text messages*. The answer is no. Section 227(c)(5) authorizes suit only by a person "who has received more than one ***telephone call***" in violation of applicable regulations. 47 U.S.C. § 227(c)(5) (emphasis added). A text message is not a "telephone call" within the meaning of that subsection. Because Plaintiff's sole cause of action rests exclusively on the receipt of text messages, the entire Amended Complaint fails as a matter of law.

Even if this Court were to conclude that § 227(c)(5) encompasses text messages—and it should not—the Amended Complaint independently fails because it does not plausibly allege that New Era "initiated" the text messages at issue. The messages came from unidentified phone numbers; they were addressed to "Amina" (not Plaintiff); and the only connection Plaintiff draws to Defendant is (1) a follow-up email from a @neweralendingllc.com address that Plaintiff herself solicited by responding to one of the messages, and (2) a post-demand-letter email from Defendant's President acknowledging only a data error. These allegations are "merely consistent with" liability and do not "nudge[ ]" Plaintiff's claims "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

For these reasons, and those set forth more fully below, the Amended Complaint should be dismissed with prejudice.

## II. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

### A. Procedural History

Plaintiff filed her original Complaint on or about May 2026, asserting a single cause of action under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c). (Dkt. 1.) On June 10, 2026, Defendant filed its first Motion to Dismiss the original Complaint. (Dkt. 7.)

The Court has not ruled on that Motion. On June 11, 2026, Plaintiff filed her First Amended Class Action Complaint (Dkt. 8), which is now the operative pleading and the subject of the instant Motion.

### B. Factual Allegations of the Amended Complaint

Plaintiff Deborah Ann Collins resides in Lake County, Florida. (FAC ¶ 5.) Defendant New Era Lending, LLC is a mortgage brokerage company headquartered in Houston, Harris County, Texas. (FAC ¶¶ 6, 10.)

Plaintiff alleges that her cellular telephone number, (303) XXX-1717, has been registered on the National Do Not Call Registry since October 31, 2004. (FAC ¶ 14.) She claims she has never been a customer of Defendant, never provided her number to Defendant, and never consented to receive communications from Defendant. (FAC ¶¶ 15–17, 37–40.)

Plaintiff alleges she received "at least fourteen telemarketing text messages promoting mortgage refinancing products and services from Defendant" between October 2025 and April 2026. (FAC ¶ 18.) The messages were sent on approximately twenty specific dates. (FAC ¶ 19.) Attached screenshots show that the messages were sent from the phone number +1 (832) 957-0316, were addressed to "Amina," and were signed by "Matt" and "Drew." (FAC at 5.) The messages promoted VA IRRRL and VA Streamline refinancing programs. (FAC ¶ 22.)

Critically, Plaintiff admits that she "responded to one of the messages and requested information regarding the advertised refinancing program to investigate who was contacting her illegally." (FAC ¶ 25.) After this voluntary engagement, a sender requested her email address and sent her "application materials." (FAC ¶ 26.) Plaintiff then received an email from "Ali Habhab at alihabhab@neweralendingllc.com promoting Defendant's VA IRRRL refinancing program." (FAC ¶ 27.)

After Plaintiff's counsel sent a demand letter, Defendant's President, Omar Said, responded by email on May 8, 2026, stating: "We received this phone number linked to a different client named Amina Haywood. The number did not link to Deborah on our end. Something happened with the data and tech so the system did not catch it. We have proof of it." (FAC ¶ 33.)

Plaintiff's sole cause of action asserts violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c). (FAC ¶¶ 59–67.) Plaintiff seeks statutory damages, treble damages, injunctive relief, and class certification. (FAC, Prayer for Relief.)

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court employs a "two-pronged approach." *Id.* at 679. First, the Court identifies pleadings that "are no more than conclusions" and therefore "are not entitled to the assumption of truth." *Id.* Second, the Court determines whether the remaining well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (alteration in original).

While the Court accepts all well-pleaded facts as true, it need not accept "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

## IV. ARGUMENT AND AUTHORITIES

### A. Section 227(c)(5) Does Not Create a Private Right of Action for Text Messages.

The dispositive question in this case is whether 47 U.S.C. § 227(c)(5) creates a private right of action for the receipt of unwanted text messages. It does not. The Seventh Circuit's recent, thorough analysis in *Steidinger v. Blackstone Med. Services*, 182 F.4th 532, 537 (7th Cir. 2026),

is directly on point and should be adopted by this Court. Because Plaintiff's sole cause of action rests on text messages—not telephone calls—the entire Amended Complaint fails as a matter of law.

#### *1. The Plain Meaning of "Telephone Call" Excludes Text Messages.*

Section 227(c)(5) provides a private right of action for "[a] person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added). The statute does not define "telephone call." Courts therefore look to the "ordinary public meaning of its terms at the time of its enactment." *Bostock v. Clayton County*, 590 U.S. 644, 654 (2020).

The TCPA was enacted in 1991. At that time, *Webster's Ninth New Collegiate Dictionary* defined "telephone" as "[a]n instrument for reproducing sounds at a distance" and "call" as "to get or try to get into communication by telephone." *Steidinger*, 182 F.4th at 535-36. A "telephone call" thus referred to *communication via sound*. *Id.* Text messages do not reproduce sounds. Indeed, it is undisputed that the first text message was not sent until December 1992—*after* the TCPA's enactment. *Id.* at 535. (citing *Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780, 786 n.3 (N.D. Ill. 2016)).

As the court in *Sayed v. Naturopathica Holistic Health, Inc.* observed, "in common American English usage, a telephone call and a text message are separate and distinct forms of communication." 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025). No reasonable person in 1991—or today—would describe receiving a text message as receiving a "telephone call."

#### *2. The Statutory Structure Confirms That "Telephone Call" Is Narrower Than "Telephone Solicitation."*

The context of the statute removes any doubt. Sections 227(c)(1) through (c)(4) each use the term "telephone solicitation," which the TCPA defines as "the initiation of a *telephone call or message* for the purpose of encouraging the purchase or rental of, or investment in, property,

goods, or services." 47 U.S.C. § 227(a)(4) (emphasis added). But Section 227(c)(5) uses only the term "telephone call"—conspicuously omitting "or message."

Under the meaningful-variation canon, "because Congress used a different term in these two subsections of § 227, it intended a different meaning." *Steidinger*, 182 F.4th at 536 (citing *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457–58 (2022)). "The best reading of § 227(c)(5) is therefore that it provides a narrower remedy than recovery for all forms of telephone solicitation; plaintiffs may sue after receiving unwanted telephone calls, but not unwanted telephone solicitations (which include not merely calls but also messages)." *Id.*

Moreover, Section 227(d)(1)—addressing fax machines—demonstrates that Congress in 1991 regarded text-based communications transmitted electronically as "messages," not "calls." *Id.* at *3. Modern-day text messages are thus better understood as "messages" rather than "calls" within the TCPA's framework. *See Nielsen v. Preap*, 586 U.S. 392, 414 (2019) (per the canon against surplusage, "every word and every provision is to be given effect").

### 3. *Congress Amended Other Subsections to Cover Texts but Left § 227(c)(5) Unchanged.*

Congress knows how to cover text messages when it wants to. In 2018, Congress amended § 227(e) to explicitly cover "text messages" and defined the term for that subsection. Consolidated Appropriations Act, sec. 503(a), § 227(e)(1), (8), 132 Stat. 348, 1091–92 (2018). It could have done the same for § 227(c)(5) but chose not to. *Steidinger*, 182 F.4th at 539.

Congressional inaction "lacks persuasive significance in most circumstances." *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 424 (2017); *see also Alexander v. Sandoval*, 532 U.S. 275, 292 (2001). This Court should not read into § 227(c)(5) coverage that Congress itself declined to provide.

### 4. *Prior Decisions Finding Texts Are "Calls" Under § 227(b) Are Distinguishable.*

Plaintiff will likely invoke cases holding that text messages are "calls" under the TCPA. But every such decision involves § 227(b)—a different provision with materially different language. *See, e.g.*, *Breda v. Cellco P'ship*, 934 F.3d 1, 4 n.1 (1st Cir. 2019); *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 88–89 (2d Cir. 2019); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015).

Section 227(b)'s private right of action is "broadly framed": it permits "an action based on a violation of this subsection or the regulations prescribed under this subsection." 47 U.S.C. § 227(b)(3)(A). By contrast, § 227(c)(5) explicitly limits recovery to persons who received more than one "telephone call." *Steidinger*, 182 F.4th at 539. "[T]here is a difference in language that both explains and supports our conclusion that § 227(c)(5) does not apply to text messages." *Id.*

Moreover, the Supreme Court in *Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 & n.2 (2021), confirmed that its earlier statement in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), was not a substantive holding on whether texts are "calls" but merely an assumption for that case because "[n]either party disputes that the TCPA's prohibition also extends to sending unsolicited text messages." *Duguid*, 592 U.S. at 400 n.2. Here, the parties *do* dispute that issue, and this Court must resolve it.

***5. No Deference Is Owed to the FCC's Interpretation.***

Plaintiff may argue that the FCC's longstanding interpretation of 'call' to include text messages resolves the question. It does not. Following the Supreme Court's decisions in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), and *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), this Court must 'independently determine for itself whether the agency's interpretation of a statute is correct.' *McLaughlin*, 606 U.S. at 168. The Court must 'determine the meaning of the law under ordinary principles of statutory interpretation,

affording appropriate respect to the agency's interpretation,' but it is not bound by that interpretation. *Id*.

Three distinct concepts must be distinguished. First, the FCC's regulatory authority under § 227(c)(1)–(4) to promulgate rules protecting subscribers from unwanted 'telephone solicitations' is not in question. Second, the FCC's interpretation that text messages fall within those regulations—while entitled to 'appropriate respect'—does not bind this Court's independent statutory analysis. *McLaughlin*, 606 U.S. at 168. Third, and most critically, the question whether Congress's use of 'telephone call' in the private right of action in § 227(c)(5) encompasses text messages is a question of statutory interpretation that this Court must resolve independently. As 'agencies have no special competence in resolving statutory ambiguities. Courts do.' *Loper Bright*, 603 U.S. at 373.

The court's reasoning in *McGonigle v. Pure Green Franchise Corp.*, 2026 WL 111338 (S.D. Fla. Jan. 15, 2026), is particularly instructive. In *McGonigle*, the plaintiff argued that Congress's delegation to the FCC in § 227(c)(1)(E)—authorizing the Commission to 'develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section'—empowered the FCC to 'fill up the details' and define 'telephone call' to include text messages. *Id.* at *2. The court rejected that argument, reasoning that '[d]etermining whether "telephone call" in § 227(c)(5) includes text messages would likely more than double the number of private causes of action authorized by the TCPA. Doubling the scope of the provision is not "filling up the details."' *Id.* The court concluded: '[W]e merely reject Plaintiff's request that we use § 227(c)(1)(E) to resurrect *Chevron* out of the grave. § 227(c)(1)(E) does not require this Court to defer to the Commission's interpretation of § 227(c)(5).' *Id.* And the court confirmed that it would 'ultimately resolve the

issue of whether § 227(c) includes a cause of action for text messages by exercising our "special competence in resolving statutory ambiguities."' *Id.*

Moreover, the FCC's extension of Do-Not-Call Registry protections to text messages was made pursuant to § 227(c)(3)—which directs the FCC to protect subscribers from 'telephone solicitations'—not pursuant to § 227(c)(5), which creates a narrower private right of action limited to 'telephone calls.' *Steidinger*, 182 F.4th at 538. As *Steidinger* explained, the FCC's different interpretation of 'call' as it appears 'elsewhere in the statute or in other contexts isn't sufficient to override' the court's conclusion about the meaning of § 227(c)(5). *Id.* at 539. This Court respectfully recognizes that *Alvarez* reached a different conclusion on this point, but the legal landscape has further developed since that decision. In particular, *Steidinger*'s appellate-level analysis provides additional guidance on how *McLaughlin* and *Loper Bright* apply to this specific statutory question.

***6. Policy Arguments Cannot Overcome the Statutory Text.***

The TCPA's "remedial nature cannot overcome the clear commands of [§ 227(c)(5)'s] text and the statutory context." *Duguid*, 592 U.S. at 406; *Steidinger*, 182 F.4th at 539; *see also Hulce v. Zipongo Inc.*, 132 F.4th 493, 500 (7th Cir. 2025) (rejecting "appeals to the remedial nature of the TCPA" when the court's interpretation was "based on clear statutory language"). Moreover, Congress specifically found that telemarketing *calls* create a public safety risk by seizing telephone lines needed for emergencies. Pub. L. No. 102-243, § 2, 105 Stat. 2394. Spam text messages do not pose this risk, "making it unsurprising ... that § 227(c)(5)'s private right of action would cover telephone calls but not messages." *Steidinger*, 182 F.4th at 540.

***7. A Growing Consensus of Authority Supports Dismissal.***

The Seventh Circuit's decision in *Steidinger* is part of a growing consensus. Multiple district courts have reached the same conclusion. *See Radvansky v. 1-800-Flowers.com, Inc.*, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026) (dismissing § 227(c)(5) text message claim and noting that "three district courts in [the Eleventh] Circuit all concluded" that "telephone call" does not include texts); *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1272–73 (N.D. Fla. 2025); *Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025); *Jones v. Blackstone Medical Servs., LLC*, 2025 WL 2042764 (C.D. Ill. July 21, 2025) (district court below *Steidinger*).

***8. This Court's Decision in Alvarez v. Fiesta Nissan Does Not Foreclose Defendant's Statutory Argument.***

Defendant is mindful that Chief Judge Crane considered a similar question in *Alvarez v. Fiesta Nissan, Inc.*, 2026 WL 202930 (S.D. Tex. Jan. 26, 2026), and concluded that 'telephone calls' in § 227(c)(5) include text messages. *Alvarez* reasoned that the 1991 dictionary definition of 'call'—'to get or try to get into communication by telephone'—is 'capacious' enough to encompass text messages and that a text message 'falls reasonably within the literal language of the statute.' *Id.* at *4–5. *Alvarez* also found contextual support in § 227(c)(5)'s reference to violations of 'the regulations prescribed under this subsection,' reasoning that because the regulations implementing § 227(c) address 'telephone solicitations'—a term encompassing both calls and messages—the private right of action should be read coextensively. *Id.* at *6.

New Era respectfully submits that the more recent and comprehensive textual analysis in *Steidinger* warrants a different conclusion. *Steidinger* addressed the precise contextual argument on which *Alvarez* relied—that § 227(c)(5)'s reference to 'regulations prescribed under this subsection' incorporates the broader scope of 'telephone solicitation'—and rejected it, explaining that the reference 'simply clarifies which calls—i.e., those that violate relevant regulations—are

the basis for a suit' rather than expanding the types of communications actionable under the private right of action. *Steidinger*, 182 F.4th at 539.

Additionally, while *Alvarez* found the definition of 'call' sufficiently capacious to reach text messages, *Steidinger* conducted a more granular analysis of the full phrase 'telephone call'—not merely the word 'call' in isolation—and concluded that in 1991 a 'telephone call' referred to 'communication via sound' because a 'telephone' was '[a]n instrument for reproducing sounds at a distance.' *Id.* at 536. *Steidinger* further emphasized the meaningful-variation canon: Congress's deliberate use of the narrower term 'telephone call' in § 227(c)(5), as opposed to 'telephone solicitation' (which includes 'a telephone call or message') in §§ 227(c)(1)–(4), reflects an intentional distinction. *Id*. *Alvarez*'s analysis did not fully account for this structural feature of the statute.

Importantly, *Alvarez* itself acknowledged that whether text messages qualify as 'telephone calls' under § 227(c)(5) is a 'closer call' when the modifier 'telephone' is considered. 2026 WL 202930, at *4. With the benefit of the Seventh Circuit's thorough analysis in *Steidinger*—which was decided after *Alvarez*—this Court has a principled basis to reach a different conclusion on this close question of statutory interpretation.

Because Plaintiff's sole cause of action rests on text messages, not telephone calls, the entire Amended Complaint fails as a matter of law and should be dismissed with prejudice. This is a purely legal deficiency that cannot be cured by further amendment.

### B. The Amended Complaint Does Not Plausibly Allege That Defendant Is Liable—Directly or Vicariously—for the Text Messages at Issue.

Even assuming *arguendo* that § 227(c)(5) covers text messages, the Amended Complaint must still plausibly allege that New Era is liable—either directly or vicariously—for **the** text messages at issue. It does neither**.**

***1. The Amended Complaint Does Not Plausibly Allege Direct Liability.***

Even assuming *arguendo* that § 227(c)(5) covers text messages, the Amended Complaint must still plausibly allege that New Era "initiated" or "caused to be initiated" the messages at issue. 47 C.F.R. § 64.1200(c). It does not.

The text messages came from the phone number (832) 957-0316. (FAC at 5.) The Amended Complaint does not allege that this number belongs to New Era, is registered to New Era, or was ever used by New Era. The messages were signed by "Matt" and "Drew"—individuals not alleged to be employees or agents of Defendant. And the messages were addressed to "Amina"—not Plaintiff.

Plaintiff's theory of attribution rests on two post hoc events: (1) after Plaintiff *voluntarily responded* to one of the messages "to investigate who was contacting her illegally" (FAC ¶ 25), she eventually received an email from a @neweralendingllc.com address; and (2) after Plaintiff's counsel sent a demand letter, Defendant's President acknowledged only that Plaintiff's number was associated in Defendant's records with a different client named "Amina Haywood" and that a "data and tech" error occurred. (FAC ¶ 33.)

These facts are, at best, "merely consistent with" Defendant having some connection to the messages, but they "do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678–79. Omar Said's email does not state that New Era sent the text messages. It states that New Era "received this phone number linked to a different client." (FAC ¶ 33.) This is equally consistent with a third-party lead generator having obtained Plaintiff's number from an independent data source, associated it with the name "Amina Haywood," and transmitted that lead data to New Era—with the text messages having been sent by the lead generator, not New Era.

Under *Iqbal*, where the well-pleaded facts support an "obvious alternative explanation," the complaint fails to state a claim. *Id.* at 682.

Plaintiff attempts to bridge this gap through FAC ¶ 30, which alleges that the sequence of communications 'demonstrates that the text messages and email communications were components of the same marketing campaign promoting Defendant's mortgage products.' But this allegation does not answer the legally relevant question: who initiated the challenged text messages, and on what factual basis can those communications be attributed to New Era? The fact that the texts allegedly promoted mortgage refinancing products similar to those offered by New Era, or that Plaintiff eventually received a New Era email after she responded to a text and affirmatively requested additional information, does not itself establish that New Era initiated the earlier texts. The conclusion that these communications were part of the 'same marketing campaign' is precisely the type of inferential leap that *Iqbal* prohibits when the well-pleaded facts support an equally plausible alternative explanation. 556 U.S. at 682.

This Court's sister court dismissed under analogous circumstances in *Horton v. National Republican Senatorial Committee*, 2023 WL 372066 (N.D. Tex. Jan. 23, 2023). There, the court held that "merely stating that he received a message which included a link to a website soliciting donations for the [defendant] is not enough to nudge [plaintiff's] argument across the line from conceivable to plausible." *Id.* at *5. Here, Plaintiff's after-the-fact email chain—which she herself initiated—is no more probative of New Era's responsibility for the original text messages than a hyperlink to a defendant's website.

Contrast *Jubb v. CHW Group, Inc.*, 2025 WL 942961, at *4 (D.N.J. Mar. 28, 2025), where the complaint survived dismissal because "the callers identified themselves as calling from [defendant]," and the phone numbers used were "confirmed to be associated with" the defendant.

Here, neither condition is met: the senders identified themselves only as "Matt" and "Drew," and no phone number has been linked to Defendant.

***2. The Amended Complaint Does Not Plausibly Allege Vicarious Liability.***

If Plaintiff's theory is that a third party sent the messages on Defendant's behalf, the Amended Complaint must allege facts establishing an agency relationship sufficient to impose vicarious liability. A 'seller may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers.' *In re Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6584 (2013); see *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016). But 'the law does not presume agency.' *Aguilar v. Liberty Bankers Life Ins. Co.*, 2026 WL 2033141, at *2 (S.D. Tex. July 14, 2026) (Rosenthal, J.) (citing *Suarez v. Jordan*, 35 S.W.3d 268, 272 (Tex. App.—Houston [14th Dist.] 2000, no pet.)). The plaintiff must allege facts supporting actual authority, apparent authority, or ratification.

<u>Actual Authority</u>. 'For TCPA cases, the relevant inquiry is whether the principal controlled—or had the right to control—the manner and means of the telemarketing campaign.' *Aguilar*, 2026 WL 2033141, at *2 (quotation omitted). The FAC contains no factual allegations showing that New Era gave any third party actual authority to send the text messages at issue. It does not identify the sender, describe any contractual relationship between New Era and a third-party marketer, or allege that New Era controlled the manner and means of any texting campaign.

<u>Apparent Authority</u>. Apparent authority requires that the principal itself made representations to the plaintiff about the agent's authority. *Id.* at *3. 'Apparent authority requires reliance on the representations or acts of the principal.' *Id.* Here, there is no allegation that New Era made any representation to Plaintiff about any third party's authority to contact her. Plaintiff

does not allege she spoke with a New Era employee or received any communication from New Era prior to her own voluntary response to the unidentified text messages.

<u>Ratification</u>. Ratification requires that the principal retained the benefits of the transaction after acquiring full knowledge of the allegedly unlawful conduct. *Id.* at *3. The FAC does not allege that New Era retained any benefit from the text messages. Indeed, Plaintiff never became a customer, never purchased any product, and the only 'benefit' alleged is a lead record associated with a different person's name—which Defendant's President characterized as a data error. (FAC ¶ 33.)

The insufficiency of conclusory allegations connecting a defendant to telemarketing activity is well-established. In *Horton v. Advantage One Brokers Corp.*, 2024 WL 251172 (N.D. Tex. Jan. 4, 2024), the court initially denied default judgment—even under the lower pleading threshold applicable in the default-judgment context—because the plaintiff 'failed to allege facts indicating that [the defendant] was responsible for any of the calls at issue, whether directly or vicariously.' *Id.* at *1. Only after the plaintiff amended to allege specific facts demonstrating an agency relationship—including that calls were transferred to a known broker of the defendant and that the defendant appeared to maintain an internal DNC list—did the court find the allegations sufficient. *Id.* at *4. If conclusory allegations of responsibility are insufficient even at the lower default-judgment threshold, they are a fortiori insufficient under Rule 12(b)(6). *See id.* at *2 (noting that 'the requisite threshold for pleading sufficiency is lower on a motion for default judgment than on a motion to dismiss').

Similarly, in *Aguilar*, this Court dismissed TCPA claims against a life insurance company despite allegations that the plaintiff received 163 telemarketing calls promoting the defendant's products, purchased a policy sold by an identified agent, and confirmed the agent's connection to

the defendant. 2026 WL 2033141, at *1. Even with those far more detailed factual allegations, the court concluded that the complaint failed to plead actual authority, apparent authority, or ratification. *Id.* at *2–4. Plaintiff Collins's allegations are materially weaker: she cannot identify any sender, cannot name any agent, and her only connection to New Era arose from her own voluntary response to an unidentified text message.

In sum, the FAC attempts to bridge the factual gap between unidentified text senders and New Era by alleging that all communications were 'components of the same marketing campaign.' (FAC ¶ 30.) But that conclusion does not establish either (1) that New Era itself initiated the texts or (2) that whoever did initiate them acted as New Era's agent under a recognized theory of vicarious liability. Plaintiff's claims should be dismissed for failure to state a claim.

### C. Plaintiff Has Not Adequately Pleaded Entitlement to Treble Damages or Injunctive Relief.

Even if the Court declines to dismiss the Amended Complaint in its entirety, Plaintiff has not adequately pleaded entitlement to treble damages or prospective injunctive relief, and those claims should be dismissed.

#### *1. Plaintiff Has Not Pleaded 'Willful or Knowing' Violations.*

Under the TCPA, a court may in its discretion award up to treble damages only where the defendant 'willfully or knowingly' violated the statute. 47 U.S.C. § 227(c)(5)(C). A willful or knowing violation 'does not requir[e] bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute.' *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001).

The FAC does not plead facts plausibly establishing that New Era knew or should have known that its conduct violated the TCPA. To the contrary, Plaintiff's own allegations undermine any inference of willfulness. The FAC alleges that Defendant's President, Omar Said, explained

that Plaintiff's telephone number 'did not link to Deborah on our end' and that '[s]omething happened with the data and tech so the system did not catch it.' (FAC ¶ 33.) Taken as true, as the Court must at this stage, these allegations describe a possible data or technology error—not facts plausibly showing a willful or knowing TCPA violation.

In *Hunsinger v. 204S6TH LLC*, 2022 WL 1110354, at *9 (N.D. Tex. Mar. 23, 2022), the court denied treble damages because 'there are no allegations that [defendant] made any calls after being notified that it was violating the TCPA' and the plaintiff failed to 'identify why [defendant] had a reason to know, or should have known, that its conduct would violate the statute.' *Id.* (citing *Adamcik v. Credit Control Servs., Inc.*, 832 F. Supp. 2d 744, 754–55 (W.D. Tex. 2011)). The same analysis applies here. The FAC does not allege that New Era sent any additional text messages after Plaintiff's counsel notified Defendant of the alleged violations. Absent factual allegations showing that New Era had reason to know its conduct was unlawful, Plaintiff's conclusory assertion that the violations were 'knowing and willful' is insufficient to support treble damages. Plaintiff's treble-damages claim should be dismissed.

***2. Plaintiff Has Not Pleaded Facts Supporting Injunctive Relief.***

Plaintiff seeks a permanent injunction enjoining Defendant from future TCPA violations. (FAC, Prayer for Relief ¶ (e).) But '[p]ermanent injunctions are never lightly given' and require a showing of 'a clear threat of continuing illegality portending immediate harmful consequences irreparable in any other manner.' *Posada v. Lamb County, Tex.*, 716 F.2d 1066, 1070 (5th Cir. 1983).

Courts in this Circuit have consistently held that a plaintiff seeking injunctive relief under the TCPA must 'allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.' *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). Where there is no

evidence that the defendant has contacted the plaintiff since the communications 'complained about in th[e] lawsuit, there can be no imminent threat of repeated violations of the TCPA.' *Shields v. Gawk Inc.*, 2019 WL 1787781, at *6 (S.D. Tex. Apr. 24, 2019), adopted by 2019 WL 2103423 (S.D. Tex. May 14, 2019); see also *Hunsinger*, 2022 WL 1110354, at *10 ('There are no allegations that Plaintiff has received a call from [defendant] since his ... email requesting his number be removed from its calling list.').

Indeed, this Court reached the same conclusion in *Alvarez*, dismissing the plaintiff's injunctive-relief claim because '[p]laintiff's pleadings and response do not argue that Defendant still retains Plaintiff's phone number, nor do they explain exactly how many messages he received from Defendant before suit,' and plaintiff 'does not even argue that he is in imminent threat of future unlawful text messages from [defendant] at all.' 2026 WL 202930, at *7.

The FAC's chronology compels the same result here. Plaintiff's counsel affirmatively notified New Era of the alleged TCPA violations. (FAC ¶ 31.) Defendant's President responded by email, investigated the issue, and explained that a data error had occurred. (FAC ¶ 33.) The FAC does not allege that Plaintiff received any additional text messages after New Era received notice of the issue. The only allegation supporting injunctive relief is FAC ¶ 58's conclusory statement, made 'on information and belief,' that the solicitation activity is 'substantially likely to continue in the future if an injunction is not entered.' This bare conclusion, unsupported by any factual allegations of post-notice communications, does not plausibly establish a realistic or imminent likelihood that Plaintiff herself will receive additional communications from New Era. Plaintiff's claim for injunctive relief should be dismissed.

## V. CONCLUSION

For the foregoing reasons, Defendant New Era Lending, LLC respectfully requests that this Court dismiss Plaintiff's First Amended Class Action Complaint as follows:

**First**, with prejudice on the ground that 47 U.S.C. § 227(c)(5) does not create a private right of action for text messages—a purely legal deficiency that cannot be cured by further amendment;

**Second**, and in the alternative, for failure to plausibly allege either direct or vicarious liability connecting Defendant to the text messages at issue;

**Third**, and in the further alternative, to the extent any claim survives, dismiss Plaintiff's claims for treble damages and injunctive relief for failure to adequately plead the prerequisites for such relief.

Defendant further requests such other and further relief as the Court deems just and proper.

Dated: August 24, 2026

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Michael A. Harvey*
**MICHAEL A. HARVEY**
State Bar No. 24058352
700 Milam Street, Suite 800
Houston, Texas 77002
Phone: (713) 222-4015
Fax: (713) 222-5868
mharvey@munsch.com

**ATTORNEY FOR DEFENDANT NEW ERA LENDING, LLC**

**OF COUNSEL:**

**MELANIE MADDEN**
State Bar No. 24145291
MUNSCH HARDT KOPF & HARR, P.C.
700 Milam Street, Suite 800
Houston, Texas 77002
Telephone: (713) 222-4075
mmadden@munsch.com

## CERTIFICATE OF SERVICE

Pursuant to Rule 5 of the Federal Rules of Civil Procedure, the undersigned counsel for the Defendant certifies that the foregoing document has been filed with the Court and served upon all known parties of record via the Court's electronic case filing system and/or by email on August 24, 2026.

*/s/ Melanie Madden*
Melanie Madden